Presiding Judge: Lindsay C. Jenkins
Magistrate Judge: Beth W. Jantz
Filed : 10/2/2026
Lead Case No: 1:25-cv-12714
NF

A TRUE COPY-ATTEST
THOMAS G. BRUTON, CLERK
By: s/ NF
DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS
October 6, 2026

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: ABBOTT LABORATORIES SPINAL CORD STIMULATOR PRODUCTS LIABILITY LITIGATION**

MDL No. 3194

## TRANSFER ORDER

**Before the Panel**:* Plaintiffs in two actions move under 28 U.S.C. § 1407 to centralize this litigation involving allegedly defective implantable spinal cord stimulator devices in the Central District of California. This litigation consists of fifteen actions pending in six districts, as listed on Schedule A. The parties have notified the Panel of eleven related actions pending in ten districts.[1] Plaintiffs in seven actions and potential tag-along actions support the motion. Plaintiff in the District of New Jersey action suggests centralization in the Northern District of Illinois. Defendant Abbott Laboratories (Abbott) opposes centralization.[2] Defendant the United States Food and Drug Administration (the FDA) takes no position on centralization and states that the claims against it should be dismissed.

In the actions before the Panel, plaintiffs allege that they suffered injuries arising from the implantation and use of a spinal cord stimulator (SCS) manufactured by Abbott. They allege that the FDA granted Premarket Approval (PMA) of Abbott's SCS not based on Abbott-sponsored clinical trials but, instead, based on published literature related to similar systems manufactured by other companies. Since the original PMA was approved, plaintiffs assert that Abbott has introduced numerous new SCS devices incorporating significant modifications under supplements to the original PMA. They allege that Abbott failed to comply with regulatory requirements and deprived physicians and patients of the complete information necessary to evaluate the true risks associated with these devices. Certain plaintiffs naming the FDA as a defendant further contend that the FDA failed to meaningfully review Abbott's PMA and PMA supplements. Finally, almost all plaintiffs assert that Abbott sales representatives engaged in the unauthorized practice of medicine by, *e.g.*, programming, reprogramming, or making therapeutic adjustments to their

* Judge M. Casey Rodgers took no part in the decision of this matter.

1 These actions and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(i), 7.1, and 7.2.

2 At oral argument, Abbott's counsel stated that, if the Panel grants centralization, it prefers centralization in the Central District of California.

device, often numerous times, without a physician present.

We previously considered a motion to centralize similar actions involving SCS devices manufactured by both Abbott and Boston Scientific Corporation (some parties argued that the multi-defendant proposed MDL be further expanded to include SCS devices manufactured by Nevro Corporation). We declined to create an industry-wide MDL, finding: "While plaintiffs allege similar conduct on the part of each manufacturer, they do not allege the manufacturers acted in concert. Each manufacturer has its own line of SCS devices, each of which have their own regulatory histories. Discovery will not overlap concerning each manufacturer's conduct. While the FDA is common to many of the actions, the facts as to the approval of each manufacturer's products again will differ." *In re Abbott Labs. & Boston Scientific Corp. Spinal Cord Stimulator Prods. Liab. Litig.*, MDL No. 3181, __ F. Supp. 3d __, 2026 WL 1659301, at *2 (J.P.M.L. June 5, 2026). We found that creation of an MDL comprised of the actions against Boston Scientific, however, was appropriate.[3] We determined the actions shared "factual questions arising from allegations that Boston Scientific failed to comply with regulatory requirements for Class III medical devices by (1) seeking PMA approval of its SCS devices based on published literature related to SCS devices manufactured by other companies, rather than offering clinical studies demonstrating their safety and efficacy; and (2) abusing the PMA supplement process by introducing new SCS devices under successive PMA supplements with significant modifications to avoid heightened scrutiny and clinical evaluation." *Id*. at *3. While the actions now before the Panel naming Abbott are similar to the actions we centralized that name Boston Scientific, that is not the end of our inquiry. *See In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020) ("[T]he Panel makes each of its decisions based on the circumstances presented by a particular litigation at the time.").

On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact and that centralization in the Northern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All plaintiffs allege they were implanted with an Abbott SCS device and were injured. The actions share questions of fact arising from allegations that Abbott failed to comply with regulatory requirements by misusing the PMA supplement process to introduce successive new SCS devices with significant modifications to avoid heightened scrutiny and clinical evaluation requirements that would otherwise apply to novel devices. They allege that Abbott failed to warn about, and concealed the existence of, known risks associated with its SCS devices. Plaintiffs in the ten actions and potential tag-along actions who bring claims against the FDA further contend that the FDA failed to meaningfully review Abbott's PMA supplements. Additionally, almost all actions share factual questions concerning whether Abbott sales representatives engaged in the unlicensed practice of medicine by, *e.g.*, marketing, programming,

---

[3] We could not consider whether centralization of the actions against Abbott was appropriate because the actions against Abbott on the motion were pending in only one district. *See id*. at *3 n.2.

and reprogramming patients' SCS systems. Centralization under Section 1407 will eliminate duplicative discovery; streamline briefing and prevent inconsistent pretrial rulings, particularly concerning Abbott's preemption defenses; and conserve the resources of the parties, their counsel, and the judiciary.

In opposing centralization, Abbott argues that there will be plaintiff-specific questions of fact because there are numerous different models of its SCS devices, the alleged injuries vary too widely, and plaintiffs allege no common defect mechanism. Of course, "almost all injury litigation involves questions of causation that are case- and plaintiff-specific. Such differences have not been an impediment to centralization in the past." *See In re Wright Med. Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012). Proponents of centralization argue that plaintiffs allege similar, interrelated injuries. They contend that three frequent injuries stand out: nerve injury due to electrical current delivered by stimulator devices, tissue damage arising from overheating of the devices, and failure of leads causing product failure and injury. Not all of plaintiffs' alleged injuries fall into one of these categories, and defendants are correct that plaintiffs do not allege a common mechanism of defect. Nevertheless, we have "rejected the argument that products liability actions must allege identical injuries to warrant centralization." *In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014). This is particularly true where the actions share additional significant common factual issues, as they do here. *See In re Boston Scientific*, 2026 WL 1659301, at *4 ("Given the overlap in allegations concerning the PMA approval process, among other factual questions about the performance of these Boston Scientific products, we find there are sufficient common factual questions among the actions to warrant centralization."). Here, there are common factual questions concerning, *inter alia*, Abbott's compliance with regulatory requirements, its use of the PMA supplement process, and the conduct of its sales representatives. Given the significant overlap in these allegations and the overlap in threshold proceedings regarding preemption, we find centralization will provide substantial efficiencies, regardless of the diffuse nature of the injuries and any differences in alleged defects.[4]

Abbott also argues that the actions can be transferred under Section 1404 or informally coordinated. We disagree. There are now 26 actions pending in thirteen districts brought by at least four different plaintiffs' law firms. The prospect of all parties agreeing to Section 1404 transfer to a single district does not appear to be a reasonable one, and the motion practice alone would be inefficient. We are persuaded that there are enough parties, districts, and counsel to warrant centralization.

---

[4] Abbott points to three actions (the District of New Jersey *Cruz* and Northern District of New York *Haynes* actions and the Northern District of Texas *Williams* potential tag-along action) that include unique defect allegations not asserted in any other action. We do not find these differences warrant excluding the two actions on the motion from the MDL (we will consider the potential tag-along action in due course). If the transferee judge finds, after close scrutiny, that these or any other actions are sufficiently unique such that their continued inclusion in the MDL does not promote efficiency, she can suggest remand to the Panel. *See* Panel Rules 10.1-10.3.

Finally, Abbott argues that plaintiffs seeking centralization are attempting to delay rulings on motions to dismiss, seven of which are fully briefed. While centralization may cause a brief delay in rulings on several pending motions to dismiss, it will streamline briefing for motions to dismiss in all actions, which involve overlapping preemption issues.

We are not persuaded, as several parties suggest, that the litigation should be assigned to the same judge in the Central District of California who is presiding over the MDL involving Boston Scientific SCS devices. Little efficiency will be gained by placing SCS device MDLs against multiple manufacturers before one judge. Though there are two Abbott cases pending in the Central District of California, the litigation does not otherwise have a connection to the district. As we found in holding that industry-wide centralization was inappropriate, while the Abbott SCS cases and the Boston Scientific SCS cases will involve similar briefing on federal preemption, there will otherwise be little factual overlap between the litigations. *See In re Boston Scientific*, 2026 WL 1659301, at *2.

We find that the Northern District of Illinois is the most appropriate transferee district for this litigation. Ten actions already are pending in this district, where Abbott is headquartered. We will assign the litigation to Judge Lindsay C. Jenkins, an able jurist who has not yet had the opportunity to preside over an MDL. We are confident she will steer the litigation on a prudent course.

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Northern District of Illinois are transferred to the Northern District of Illinois and, with the consent of that court, assigned to the Honorable Lindsay C. Jenkins, for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell
Chair

Matthew F. Kennelly
Dale A. Kimball
Richard Seeborg
David C. Norton
Madeline Cox Arleo

**IN RE: ABBOTT LABORATORIES SPINAL CORD STIMULATOR PRODUCTS LIABILITY LITIGATION** MDL No. 3194

**SCHEDULE A**

Central District of California

1:26-cv-12216 JEAN CHARTER, ET AL. v. ABBOTT LABORATORIES, C.A. No. 2:26−05178

Eastern District of California

1:26-cv-12217 RICHARDS, ET AL. v. ABBOTT LABORATORIES, ET AL., C.A. No. 2:26−01555

Northern District of California

1:26-cv-12218 FURIA, ET AL. v. ABBOTT LABORATORIES, ET AL., C.A. No. 4:26−01945
1:26-cv-12219 SHELP, ET AL. v. ABBOTT LABORATORIES, ET AL., C.A. No. 4:26−02079

Northern District of Illinois

FULLER v. ABBOTT LABORATORIES, C.A. No. 1:25−12714
FERGUSON v. ABBOTT LABORATORIES, C.A. No. 1:25−13341
TUTTLE v. ABBOTT LABORATORIES, C.A. No. 1:25−15083
REUSS v. ABBOTT LABORATORIES, C.A. No. 1:26−01905
MELBY v. ABBOTT LABORATORIES, C.A. No. 1:26−02857
STOOKEY v. ABBOTT LABORATORIES, ET AL., C.A. No. 1:26−04172
LIVINGSTON v. ABBOTT LABORATORIES, ET AL., C.A. No. 1:26−05322
LAVIGNE v. ABBOTT LABORATORIES, ET AL., C.A. No. 1:26−05356

District of Maryland

1:26-cv-12220 MOSS v. ABBOTT LABORATORIES, ET AL., C.A. No. 8:26−02004

District of New Jersey

1:26-cv-12221 LEBRON CRUZ v. ABBOTT LABORATORIES, ET AL., C.A. No. 1:26−06326

Northern District of New York

1:26-cv-12222 HAYNES v. ABBOTT LABORATORIES, ET AL., C.A. No. 5:26−01097